UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60276-CIV-COHN/SELTZER

DHL EXPRESS (USA), INC., an Ohio corporation,

    Plaintiff,

v.

EXPRESS SAVE INDUSTRIES, INC., a New
York corporation, JOHN DOES 1-50,

    Defendants.
_____/

## ORDER DENYING DEFENDANT EXPRESS SAVE INDUSTRIES, INC.'S MOTION FOR RECONSIDERATION

**THIS CAUSE** is before the Court on Defendant Express Save Industries, Inc.'s Motion for Reconsideration [DE 62].  Defendant's Motion requests that the Court reconsider its October 6, 2009 Order Granting in Part and Denying in Part Motion to Strike Prayers of Relief [DE 61], which held that Defendant's claim for "lost anticipated profits" in connection with its Amended Counterclaims is precluded by the controlling agreement.  The Court has considered the Motion, the parties' related submissions, the argument of counsel before the Court on November 13, 2009, the record in this case, and is otherwise advised in the premises.

### I.  BACKGROUND

The Court's October 6, 2009 Order granted DHL's Motion to Strike ESI's prayer for "lost anticipated profits" raised in connection with ESI's Amended Counterclaims. The Reseller Agreement ("Agreement"), which governs the relations between DHL Express (USA), Inc. ("DHL") and Express Save Industries, Inc. ("ESI"), contains a

"[l]imitation of [l]iability" provision that reads as follows: "Neither party shall be liable for any special or consequential damages or loss of profits occasioned by any breach of the terms of the Agreement." Agreement § 8(h). The Court found "that the limitation of liability provision in the Reseller Agreement is clear and unequivocal." DE 61 at 2. The Court also reasoned that "ESI points to no indicia of unfair surprise and fails to rebut the presumption that the limitation of liability provision contained in the Reseller Agreement is conscionable. The provision is clearly set out as a separate provision in the seven-page agreement and is not buried in 'a maze of fine print.'" Id. (quoting Nursery Prods. v. Indian Wells Orchards, 797 P. 2d 477, 481 (Wash. 1990)).[1]

In support of the Motion for Reconsideration, ESI argues that it "has introduced reliable and admissible evidence demonstrating that there is a latent ambiguity in the subject Agreement, requiring the fact finder to consider extrinsic evidence to determine the intent of the contracting parties." DE 77 at 1. ESI further argues that the Court's decision to strike ESI's prayer for "lost anticipated profits" was premature and made before ESI had the ability to engage in discovery.

ESI submits two declarations from the individuals who negotiated the Agreement on behalf of Airborne Express, Inc.[2] and ESI. The declarations make similar claims.

---

[1] The Agreement provides that the "legal relations of the parties shall be construed according to the laws of the State of Washington." Agreement § 8(k). The Court found that the limitation of liability provision was valid under both Washington and Florida law. See DE 61.

[2] ESI entered into the Agreement with DHL's predecessor, Airborne Express, Inc. DHL assumed the Agreement when DHL and Airborne Express, Inc. merged in 2003.

The Declaration of Doug Thomas[3] contains a fuller description and states the following points:

- These [limitation of liability provisions] are widely employed by package delivery companies, such as DHL and Airborne, to limit liability resulting from delayed or lost shipments.  DE 62-1 ¶ 4.

- DHL or Airborne's failure to deliver a package in the manner requested can lead to significant losses incurred by a customer.  Id. ¶ 6.

- I can confirm that this limitation of liability clause was intended to limit Airborne [and DHL's] liability when performing their delivery services.  It was not intended to restrict ESI's possible damages recovery under the particular circumstances that are the subject of this case, as I understand the case.  Id. ¶ 9.

    ESI summarizes the following point, also raised in the declarations:

    With respect to most customers, these "limitation of liability" clauses are drafted into the "airbill" that is filled out by the client/shipper that secures DHL or Airborne's services.  In the case of ESI, a "reseller" that secures business for DHL but does not fill out an airbill, the limitation of liability clause had to be drafted into the Reseller Agreement.  In fact, the Reseller Agreement expressly incorporates the terms of the airbill by reference, only serving to demonstrate that the terms of the Reseller Agreement are intended to reflect the parties' agreement with respect to the performance of DHL's delivery obligations.

DE 62 at 4-5.[4]

In response, DHL argues that the Motion for Reconsideration should be denied because it repeats arguments ESI has already made and relies on evidence that was

---

[3]     Mr. Thomas is a former Director of Pricing for Airborne Express, Inc. who later became Vice President of New Business Development for DHL.  DE 62-1 ¶ 1.

[4]     ESI is referring to § 3 of the Agreement which provides, in pertinent part: "Shipments transported hereunder shall be subject to the conditions of this Agreement.  However, for conditions not covered in this Agreement, the Conditions of Contract shall be those set forth on AIRBORNE's airbill whether or not the shipper and AIRBORNE have mutually agreed to receive shipments on airbills or alternative documents."  DHL points out that ESI's interpretation would render the limitation of liability clause "superfluous," violating one of the cannons of contract interpretation.  DE 73 at 8-9 n.3.

available at the time DHL's Motion to Strike was filed. DHL also points to the integration clause. The Agreement contains a provision entitled "[e]ntire [a]greement" which provides as follows: "This Agreement contains the entire Agreement of the parties and supercedes all prior or contemporaneous agreements and understandings, whether written or oral. This Agreement may be amended only by a written instrument signed by the parties hereunder." Agreement § 8(i). Finally, DHL argues that the "declarations cannot be used to determine the parties' intent, as ESI suggests, because there is nothing ambiguous about the limitation of liability clause." DE 73 at 8.

## II.  ANAYLSIS

The Court has evaluated ESI's Motion for Reconsideration *de novo*. In other words, the Court's consideration is not prejudiced as a result of ESI's reliance on evidence that was available at the time DHL's Motion to Strike was filed, or that ESI relies on certain arguments that were previously raised.

The Motion for Reconsideration is based largely on Berg v. Hudesman, 115 Wn. 2d 657 (Wash. 1990). There, the Supreme Court of Washington stated "[w]e [ ] reject the theory that ambiguity in the meaning of contract language must exist before evidence of the surrounding circumstances is admissible." Id. at 669. "Whether or not ambiguity is apparent from the face of a contract, evidence of the circumstances of the making of the contract is admissible. We reject the plain meaning rule and expressly adopt the context rule as the applicable rule for ascertaining the parties' intent and interpreting written contracts." Id. at 678-79.[5]

---

[5] The Court notes that the Berg case involved a 99-year ground lease with varying rental rates and varying possible interpretations of those rates.

Later decisions interpreting Berg have found that parol evidence is not admissible for the purpose of adding to, modifying, or varying the terms of a written contract. Lynott v. National Union Fire Ins. Co. of Pittsburgh, Pa., 123 Wn. 2d 678, 683 (Wash. 1994) (citing Berg, 115 Wn. 2d at 669)). Under Washington law, ESI's proffered extrinsic evidence cannot assist the Court in interpreting the Agreement unless such evidence is offered to illuminate, rather than modify, its language. Hollis v. Garwall, Inc., 137 Wn. 2d 683, 697 (Wash. 1999). "[T]he Berg context rule does not allow the Court to consider extrinsic evidence where such evidence contradicts or modifies the language of the contract, and it does not allow the Court to consider the unilateral intentions of one party." St. Paul Fire & Marine Ins. Co. v. Hebert Constr., Inc., 2006 WL 2045804, *7 (W.D. Wash. July 19, 2006).

"Extrinsic evidence to interpret a covenant is limited to the interpretation of the covenant itself and may not be used to show an intention independent of the instrument." Save Sea Lawn Acres Ass'n v. Mercer, 140 Wn. App. 411, 412 (Wash. Ct. App. 2007). "Under Berg v. Hudesman and its progeny, extrinsic evidence may be relevant in discerning that intent, where the evidence gives meaning to words used in the contract." Id. In Mercer, the court held that "[b]ecause the evidence sought to be introduced here would modify the written instrument, Berg is not applicable." Id. at 418.

Further, the Supreme Court of Washington has recently stated the following:

> Our holding in Berg may have been misunderstood as it implicates the admission of parol and extrinsic evidence. We take this opportunity to acknowledge that Washington continues to follow the objective manifestation theory of contracts. Under this approach, we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties. We impute an intention corresponding to the reasonable meaning

> of the words used.  Thus, when interpreting contracts, the subjective intent
> of the parties is generally irrelevant if the intent can be determined from the
> actual words used.  We generally give words in a contract their ordinary,
> usual, and popular meaning unless the entirety of the agreement clearly
> demonstrates a contrary intent.  We do not interpret what was intended to
> be written but what was written.

Hearst Commc'ns, Inc. v. Seattle Times, 154 Wn. 2d 493, 503-504 (Wash. 2005) (citations omitted).

Based on the current state of Washington law, the Court concludes that ESI's Motion for Reconsideration must be denied.  The declarations submitted by ESI do not assist the Court in interpreting the limitation of liability provision, they change its meaning entirely.  To illustrate this point, it is instructive to compare the actual language of the Agreement with ESI's interpretation of what the provision was "intended" to mean.  The Agreement states as follows:

> Neither party shall be liable for any special or consequential damages or
> loss of profits occasioned by any breach of the terms of the Agreement.

Agreement § 8(h).  ESI argues that

> the limitation of liability clause is intended to protect DHL from liability
> based upon its delivery failures, in the performance of its delivery
> obligations.

DE 62 at 4.

The Court cannot accept ESI's strained interpretation that the limitation of liability provision applies only to the specific circumstances set forth by ESI.  First, the provision states that it applies to "<u>any</u> breach of the terms of the Agreement."  Agreement § 8(h) (emphasis added).  Second, it is contained in the section of the Agreement that deals with general, all-encompassing provisions, such as choice of law, force majeure and assignment.  Third, the provision runs both ways.  ESI could have, and almost

assuredly would have, relied on the provision had DHL sought "any special or consequential damages or loss of profits" in the Complaint.  Id.  Finally, were the Court to significantly alter a provision as straight-forward as the limitation of liability provision at issue based on extrinsic evidence, no contract would be safe from an *ad hoc* alteration made in the middle of litigation.

### III.  CONCLUSION

Based on the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendant Express Save Industries, Inc.'s Motion for Reconsideration [DE 62] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 24th day of November, 2009.

/s/ James I. Cohn
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record